UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL NO.  04-10173-DPW |
| JEFFREY MARGOLIN | ) ) ) | |
| Defendant. | ) ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM AND
OPPOSITION TO DOWNWARD DEPARTURE**

The United States submits this memorandum in advance of the September 13, 2004 sentencing of Jeffrey Margolin.

Overview

Jeffrey Margolin ("Margolin") pleaded guilty on June 21, 2004 to a two-count Information charging him with filing false and fraudulent U.S. Individual Income Tax Returns for the years 1997 and 1998, in violation of 26 U.S.C. § 7206(1).  Margolin's convictions arose out of his fraudulent overstatement of expenses allegedly incurred by his Schedule C business, which served falsely to reduce both the amount of his reported income and the tax due and owing on that income.

**I.      Factual Background**

There are no material disputes between the parties over the relevant facts.

As summarized in the Presentence Report ("PSR"), at all relevant times, Margolin owned and operated a towing business named J.D. Towing.  For each of the years 1997 and 1998, Margolin filed a Form 1040 U.S. Individual Income Tax Return with the Internal Revenue Service ("IRS").  With each Form 1040, Margolin filed a Schedule C Profit or Loss from

Business on which he reported, among other things, the gross income, total expenses, and net profit resulting from the business operations of J.D. Towing.

The charges in the Information arise out of Margolin's fraudulent overstatement of J.D. Towing's business expenses on his Schedule C's for 1997 and 1998. All of the overstated expenses involved an American Express card issued to Margolin's former wife that Margolin used for both personal expenditures and J.D. Towing expenses. Two aspects about the manner in which Margolin used and paid for this American Express card led to the false inflation on his tax returns of J.D. Towing's costs and business expenses.

First, Margolin paid American Express with checks written off J.D. Towing's business account. Because the American Express bills were paid from J.D. Towing's business account, Margolin's tax return preparer in 1997 characterized all of the charges as costs and expenses of J.D. Towing's business. They were not. Approximately $38,573 of the charges in 1997 had been identified by Margolin's bookkeeper as personal expenditures. Margolin did not inform his return preparer of this fact, thus causing the return preparer to erroneously characterize the $38,573 as "assumed gas and oil expenses."

Second, above and beyond the $38,573 in personal charges identified by the bookkeeper, Margolin also used the American Express card to charge approximately $30,900 in 1997 and approximately $27,225 in 1998 to a business named Atlantic Wrecker Sales, Inc. ("Atlantic Wrecker"). Because of a past business relationship between J.D. Towing and Atlantic Wrecker, Margolin's bookkeeper believed these charges to relate to business expenditures. The charges therefore were characterized on J.D. Towing's books and records and on Margolin's tax returns as costs and expenses of J.D. Towing's business, and served to reduce the income and profit of

the business.

In truth, however, the above-listed charges to Atlantic Wrecker in 1997 and 1998 were <u>not</u> incurred in connection with J.D. Towing's business. Unbeknownst to Margolin's bookkeeper and return preparers, Margolin was simply using the owner of Atlantic Wrecker to run his wife's American Express card through Atlantic Wrecker's charge machine. The owner of Atlantic Wrecker would then cut Margolin a check for the amount of the charge, minus any transaction fee, and Margolin would convert the check to cash at his check casher's.

Margolin did not tell his bookkeeper or his return preparers that he was receiving (and cashing) checks from Atlantic Wrecker for the American Express charges incurred at that company. Nor did he tell them not to include these charges as business expenses. The result was a further overstatement of J.D. Towing's costs and business expenses in 1997 and also in 1998, and a corresponding understatement of the company's actual net income and profit.

Totaling the foregoing yields falsely inflated costs and business expenses of approximately $69,473 in 1997 and approximately $27,225 in 1998. These inflated expenses served falsely to reduce the amount of J.D. Towing's net profit in each of these years, which in turn caused a fraudulent understatement in the amount of tax due and owing on those profits. The parties have stipulated to a combined tax loss for both years (1997 and 1998) of $30,691.

II.     **Application of Sentencing Guidelines**

As set forth in the plea agreement, the parties stipulate that the guidelines calculations should be performed pursuant to the Manual in effect at the time of the offense (November 1, 1998); that the applicable provisions are U.S.S.G. §§ 2T1.1 and 2T4.1; and that the combined tax loss resulting from the defendant's offenses equals $30,691. (<u>See</u> Plea Agreement ¶ 3).

The foregoing stipulations yield the following guidelines computation:

| Base Offense Level | 12 | U.S.S.G. §§ 2T1.1 and 2T4.1(G) |
|---|---|---|
| Acceptance | (2) | U.S.S.G. § 3E1.1 |
| **TOTAL** | **10** | |

The Probation Department concurs with this offense level. (PSR ¶ 33).

III.  **Sentencing Recommendation and Criminal History Category**

Paragraph 4 of the plea agreement commits the government to recommend the following sentence:

    (a)    Two years probation, with the first six months to be served in home confinement with electronic monitoring;

    (b)    A fine of $2,000 to be paid at sentencing; and

    (c)    A $200 special assessment

The foregoing sentence constitutes the low end of the guidelines range for a defendant with a total offense level of 10 who falls in Criminal History Category I. It is a Zone B sentence.

At the time that the government entered into the plea agreement, it believed that Margolin fell in Category I. The PSR, however, subsequently placed him in Category II. It did so based on the following two state offenses, each of which resulted in the assessment of a single criminal history point:

1.    Larceny by check, Framingham District Court, 4/26/01; and

2.    Larceny over $250, Attleboro District Court, 10/15/01.

(PSR ¶¶ 42, 43).

The government was aware of the first offense. Until receipt of the PSR, however, government counsel was not aware of the second, thus resulting in the erroneous belief that the

defendant fell in Criminal History Category I.

In view of the Attleboro District Court conviction, the government concurs with the accuracy of Probation's criminal history computations.[1]

The guidelines range for a defendant in Category II with a total offense level of 10 is 8-14 months. This range falls in Zone C, which, as Probation notes, permits a split sentence but requires that at least one-half of the minimum term be satisfied by imprisonment. (PSR ¶ 127).

The government acknowledges that its sentencing recommendation in this case is inconsistent with the foregoing range. However, as explained above, the government entered into a plea agreement committing itself to make that recommendation due to counsel's belief at the time that Margolin fell in Criminal History Category I. The government is honoring that commitment.

IV.     **Defendant's Departure Arguments**

The initial plea agreement contained a term providing that neither party would seek a departure on any ground from the Sentencing Guidelines. (Plea Agreement ¶ 4). As a result of the parties' mistaken belief that the defendant fell in Criminal History Category I, Margolin would have been eligible for a Zone B probationary sentence without a departure. In light of the additional criminal history information contained in the PSR, however, that is no longer true. Accordingly, Margolin requested and the government agreed in writing to permit him to seek a departure down to a Zone B sentence on two specified grounds: (a) that his criminal history

---

[1] The Attleboro District Court case resulted in a finding of guilty and hence the assessment of a single criminal history point pursuant to U.S.S.G. § 4A1.1(c). Probation also correctly assessed Margolin with a point for the Framingham District Court matter (PSR ¶ 42) because, although the state court continued the matter without a finding, Margolin admitted to sufficient facts. See United States v. Morillo, 178 F.3d 18 (1st Cir. 1999).

category over-represents the seriousness of his criminal history; and (b) extraordinary family circumstances.

The government did not assent to a departure on either ground. It simply agreed that it would not treat it as a breach of the plea agreement if Margolin were to move for either or both of these departures. Moreover, although the government made clear that it would abide by its commitment under the plea agreement to recommend a Zone B sentence, it also informed defense counsel that it would oppose either departure motion. The government acknowledges the unusual procedural posture thereby created. It is striving, however, to honor not only its contractual commitment to the defendant but also its obligation to the court to present a fair and accurate summary of the facts and the law.

### A.     Margolin's Requested Criminal History Departure

Section 4A1.3 provides that a court may consider a downward departure from the Guidelines where "the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." Based on the criminal history summarized in the PSR, the government does not believe that Margolin can satisfy this standard.

In his motion, Margolin references only the two prior criminal proceedings that have resulted in the assessment of criminal history points (PSR ¶¶ 42, 43), characterizing them as "minor misdemeanors" that did not result in incarceration. He does not contest the accuracy of the computations by Probation that place him in Category II; rather, he argues that the minor nature of the offenses does not warrant sentencing him as a Category II defendant.

These two offenses, however, are not the only offenses with which Margolin has been

charged or on which he has been convicted.         As detailed in the PSR, Margolin has been charged – both as a juvenile and as an adult – with approximately three dozen other criminal offenses. (PSR ¶¶ 37-45, 48-78). None of these resulted in the assessment of additional criminal history points, for a number of reasons, including the absence of incarceration, the age of the convictions (outside 10 years), and the fact that as Margolin has grown older, the charges have increasingly consisted of larceny offenses that have been dismissed upon his payment of restitution, thereby avoiding additional convictions that would have triggered additional points. (E.g., PSR ¶¶ 68, 69, 75, 76, 78).

Despite the absence of additional points, however, what remains noteworthy is the number of criminal offenses and the fact that they have continued from Margolin's youth into and through his adulthood.[2] On these facts, the government disagrees with Margolin's assertion that placing him in Criminal History Category II significantly over-represents the seriousness of his criminal history or the likelihood that he will commit further crimes.

B.     Family Circumstances Departure

The defendant also moves for a departure under U.S.S.G. § 5H1.6, asserting that his relationship with his disabled son and the financial impact that incarceration would have on his family constitute extraordinary circumstances warranting a departure.

---

[2] The government's opposition to a criminal history departure is not based simply on Margolin's record of prior arrests. It is based on the information set forth in the PSR concerning the defendant's prior criminal proceedings, including the nature of Margolin's conduct, the cases in which he admitted to sufficient facts or was found guilty, and the cases that, although dismissed, were dismissed upon Margolin's payment of restitution. E.g., United States v. Ramirez, 11 F.3d 10, 13 (1st Cir. 1993) (permissible to make departure decision under U.S.S.G. § 4A1.3 on the basis of reliable evidence of prior similar adult criminal conduct, even though conduct did not result in convictions); United States v. Terry, 930 F.2d 542, 545-46 (7th Cir. 1991) (similar).

In United States v. Pereira, 272 F.3d 76 (1st Cir. 2001), the First Circuit articulated the standards governing family circumstances departures. The Court noted that immense family hardships are, sadly, neither atypical nor unusual when a family member is incarcerated; it cited to a series of appellate cases in which such hardships, although undeniably present, were deemed insufficient to take a case out of the "heartland"; and it held, in pertinent part, that a sentencing court must find that the care rendered by a defendant is irreplaceable or otherwise extraordinary to justify a departure on family circumstances grounds. Pereira, 272 F.3d at 80-83.

Margolin cannot satisfy this standard. The financial and emotional hardships that his family will experience during the incarcerative portion of any split sentence that is imposed upon him do not, unfortunately, render his situation either atypical or extraordinary. Similarly, his twice-monthly week-end visits with his disabled son – who otherwise lives with and is cared for by Margolin's first wife, from whom Margolin separated in 1997 (PSR ¶¶ 87, 91) – do not satisfy the "irreplaceability" or "extraordinariness" standard articulated by the First Circuit in Pereira.

For all of the foregoing reasons, Margolin's departure motions should be denied.

                                                    Respectfully submitted,

                                                    MICHAEL J. SULLIVAN
                                                    United States Attorney

                            By:    /s/ Michael J. Pineault
                                   Michael J. Pineault
                                   Assistant U.S. Attorney
                                   United States Courthouse, Suite 9200
                                   1 Courthouse Way
                                   Boston, MA  02210
Dated: September 8, 2004               (617) 748-3261

<u>CERTIFICATE OF SERVICE</u>

    This is to certify that I have this day served upon the persons listed below a copy of the foregoing document by fax (Attorney Leppo) and by hand (Ms. Marcy):

| | |
|---|---|
| Martin K. Leppo, Esq. | Ms. Tricia Marcy |
| Leppo & Leppo | U.S. Probation Office |
| 15 South Main Street | |
| Randolph, MA 02368 | |

This 8th day of September, 2004

                                                            /s/ Michael J. Pineault
                                                         Michael J. Pineault